RYAN HOMES, INC., APPELLEE, *v.* OHIO DEPARTMENT OF INDUSTRIAL RELATIONS, BOARD OF BUILDING STANDARDS, ET AL., APPELLANTS.*

(No. 86AP-177 — Decided December 18, 1986.)

*Vorys, Sater, Seymour & Pease, Charles D. Minor* and *Janice A. Judge,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Kevin J. Reis,* for appellants.

*Ronald J. O'Brien,* city attorney, and *Donald T. Plank,* for *amicus curiae* city of Columbus.

WHITESIDE, J. Defendants, state of Ohio, Department of Industrial Relations, Board of Building Standards, et al., appeal from a declaratory judgment of the Franklin County Court of Common Pleas declaring Ohio Adm. Code 4101:2-23-99 to be invalid because it conflicts with R.C. 3781.10. In support of their appeal, defendants have raised a single assignment of error as follows:

"The trial court erred in striking down Rule 4101:2-23-99 because said rule is not in conflict with R.C. Section 3781.10; and, because the promulgation of said rule is expressly authorized in Section 3781.10(A) as 'necessary or desirable to effectuate the purposes of [s]ections 3781.06 [to] 3781.18' pertaining to industrialized units."

In the judgment entry, the trial court stated in part:

"Rule 4101:2-23-99 creates a distinction between 'open' and 'closed' construction and limits Board approval of an industrialized unit to only those portions which are 'closed construction' i.e. concealed and not readily accessible for inspection at the site of erection, without disassembly, damage or destruction. * * * This condition of 'closed construction' is not provided in nor [*sic*] contemplated by the statutory definition of industrialized unit found under R.C. 3781.10.* * *"

* Reporter's Note: An appeal by Ryan Homes, Inc. to the Supreme Court of Ohio was dismissed upon application of its counsel on February 17, 1987 (case No. 87-261).

Upon request, the trial court did make findings of fact and conclusions of law, the findings of fact consisting solely of: (1) adoption by reference of paragraphs one to thirteen of the stipulations filed by the parties; (2) quotation of R.C. 3781.10 and Ohio Adm. Code 4101:2-23-99(C); and (3) a statement that the rule includes the condition of "closed construction" while the statute does not contain such a limitation.

The stipulations indicate that plaintiff, Ryan Homes, Inc., filed a petition with the board on June 17, 1982, seeking "to use special materials, assemblages and methods of manufacture in connection with the production of its new ranch model, the 'Caroline.' " A revised petition was adopted by the board on October 28, 1982, including only "items, units or assemblies which the Board considers to be 'closed construction,' " necessarily excluding "open construction," which is indicated by the stipulations "to be items, units or assemblies, including, but not limited to, open wall interior panels, roof trusses, roof sheathing, exposed wiring harnesses, and plumbing that connects factory fabricated cores to city sewer and water supplies."

Earlier, plaintiff had submitted a petition on September 22, 1981, seeking to amend Ohio Adm. Code 4101:2-23-99 to provide that:

"The complete approved package of the industrialized units may, in addition to the closed construction, contain specifically evaluated and approved supplemental, structural, mechanical, plumbing or electrical components making up the envelope or contained within the envelope."

Hearings were held by the board on the petition to amend the rule, at which plaintiff presented evidence. On November 4, 1982, the board denied the petition to amend the rule by an order indicating the petition to amend was "denied because the weight of the testimony and evidence at the hearings shows that the proposed change is not in the public interest," and that the board lacks statutory authority to adopt the proposed language. At no time thereafter did plaintiff object in writing to the board or request a hearing before the board concerning the refusal to amend the rule.

Predicated upon this evidence, the common pleas court not only declared the rule to be invalid but also included a finding in the judgment entry that "Ryan Homes' products constitute industrialized units under R.C. 3781.10 and are subject to the definitions therein contained." There is no evidence in the record on appeal supporting such a conclusion, there being no evidence as to whether plaintiff's products constitute industrialized units within the contemplation of R.C. 3781.10. Nevertheless, the primary issue before this court is whether the trial court erred in declaring the rule to be unconstitutional as being in conflict with R.C. 3781.10. As amended effective July 1, 1979, Ohio Adm. Code 4101:2-23-99(A) included the following:

"Note 2. 'Closed construction' as used herein means an assembly of materials or products manufactured in such a manner that its structural, plumbing, electrical, environmental control, or fire protection elements or components are concealed and are not readily accessible for inspection at the site of its erection, without disassembly, damage, or destruction."

Ohio Adm. Code 4101:2-23-99(C) read as follows:

"(C) 2300.4 Industrialized units: Industrialized units of closed construction are required to be authorized by the board of building standards in accordance with Chapter 4101:2-1 of the Administrative Code prior to the issuance of local building permit or placement in Ohio. The inherent concept of industrialized units involves substantial comple-

tion or fabrication of a unit or assembly of closed construction at a location remote from the site of intended use and requires transportation to a building site for its subsequent use as regulated by this code.

"(1) The parameters for industrialized units of closed construction may be summarized as follows:

"(a) Fabrication remote from the site of intended use;

"(b) Assembly or construction which obviates normal inspection for code compliance at the site of intended use;

"(c) Requiring transportation to the site of intended use.

"(2) Within these parameters, such generic terms as heart modules or cores, modules, modulars, service cores, prefabs, sectional or sectionalized, panels or panelized construction and such specific terms as 'prefabricated-subassembly, -building, -unit, -unit service equipment' as defined in OBBC shall be considered industrialized units. They may be self-sufficient or interdependent as a unit or group of units and used together or incorporated with standard construction methods to form a completed structural entity."

During the pendency of these proceedings in the trial court, Ohio Adm. Code 4101:2-23-99 was amended effective March 1, 1985, and now exists as Ohio Adm. Code 4101:2-1-55, with Ohio Adm. Code 4101:2-1-55(D) being substantially the equivalent of Note 2 of former Ohio Adm. Code 4101:2-23-99 (A), and present Ohio Adm. Code 4101:2-1-55(B) and (C) together being substantially the same as former Ohio Adm. Code 4101:2-23-99(C). Hereinafter, references will be to the present provisions of the Ohio Administrative Code, rather than to those referred to by the trial court and the parties since the issue before us is necessarily the validity of the present code, rather than the former, since there appears to be no significant change in meaning.

The primary issue before us is whether the rule is invalid as being in conflict with the last paragraph of R.C. 3781.10, which provides that:

"As used in sections 3781.10 to 3781.18 and 3791.04 to 3791.07 of the Revised Code, 'industrialized unit' means an assembly of materials or products comprising all or part of a total structure which, when constructed, is self-sufficient or substantially self-sufficient, and when installed constitutes the structure or part of a structure, except for preparations for its placement."

A comparison of this definitional section with the rule does not reveal any patent inherent conflict. Necessarily, however, reference must be made to other provisions of the statute, including R.C. 3781.10(A), which provides that:

"The board of building standards shall:

"(A) Formulate and adopt rules governing the erection, construction, repair, alteration, and maintenance of all buildings or classes of buildings[,] * * * the construction of industrialized units, the installation of equipment, and the standards or requirements for materials to be used in connection therewith. Such standards shall relate to the conservation of energy in and to the safety and sanitation of such buildings. The rules shall be the lawful minimum requirements specified for such buildings or industrialized units, except that no rule which specifies a higher requirement than is imposed by any section of the Revised Code shall be enforceable; the rules shall be acceptable as complete lawful alternatives to the requirements specified for such buildings or industrialized units in any section of the Revised Code; * * *."

R.C. 3781.10(C) provides in part that:

"* * * Nothing in this section shall be construed as requiring approval, by rule, of plans for an industrialized unit that conforms with the rules adopted by

the board of building standards pursuant to section 3781.11 of the Revised Code."

R.C. 3781.11 provides in part:

"The rules and regulations of the board of building standards shall:

"(A) Provide uniform minimum standards and requirements for construction and construction materials, including construction of industrialized units, to make buildings safe and sanitary as defined in section 3781.06 of the Revised Code;

"* * *

"(C) Permit, to the fullest extent feasible, the use of materials and technical methods, devices, and improvements, including the use of industrialized units which tend to reduce the cost of construction and erection without affecting minimum requirements for the health, safety, and security of the occupants or users of buildings or industrialized units and without preferential treatment of types or classes of materials or products or methods of construction;

"(D) Encourage, so far as may be practicable, the standardization of construction practices, methods, equipment, material, and techniques, including methods employed to produce industrialized units.

"* * *

"The construction, alteration, erection, and repair of buildings including industrialized units, and the materials and devices of any kind used in connection therewith and the heating and ventilating thereof and the plumbing and electric wiring therein shall conform to the statutes of this state or the rules and regulations adopted and promulgated by the board of building standards * * *."

The rule is not inconsistent with the rule-making authority granted by R.C. 3781.10(A) and 3781.11, and the trial court made no finding that the rule is in conflict with those provisions. Such sections confer broad rule-making power upon the board with respect to industri-alized units. On the other hand, the provision of R.C. 3781.10 relied upon by plaintiff and the trial court is a definitional provision defining the meaning of the term "industrialized unit" as used in the statutes conferring broad discretionary regulatory power upon the board.

Since there is no evidence in the record pertaining to the types of constructions that may be utilized, bearing upon the question of whether any particular type of construction constitutes an industrialized unit, necessarily, the issue before us is limited to facial validity of Ohio Adm. Code 4101:2-1-55, and is even more limited to consideration as to whether facially the rule conflicts with the definition of "industrialized unit" set forth in R.C. 3781.10.

Basically, plaintiff's contention is that utilization of the concept of "closed construction" as defined by Ohio Adm. Code 4101:2-1-55(D) is inherently in conflict with the statutory definition of "industrialized unit," so as to render the rule invalid.

Unfortunately, the definition of "industrialized unit" set forth in R.C. 3781.10 is anything but a paragon of clarity. The definition of "industrialized unit" contains four prerequisites: (1) it must be an assembly of materials or products; (2) it must comprise all or part of a total structure; (3) when constructed, it must be self-sufficient or substantially self-sufficient; and (4) when installed, it must constitute the structure or a part of the structure except for preparations for its placement. Grammatically, it would be arguable that the "which" clause of the definition modifies the word "structure" under the rule of the last antecedent. However, this is a compound clause containing two parts: one commencing with "when constructed" and the other with the words "when installed." The latter ("when installed") clause necessarily modifies "assembly" rather than "structure," for otherwise it would be nonsensical. Since both the "when con-

structed" and "when installed" clauses necessarily modify the same word, they both modify "assembly" rather than "structure." Accordingly, an "industrialized unit" must be an assembly which, when constructed, is self-sufficient or substantially self-sufficient. It also must, when installed, constitute the structure or part of the structure except for preparation for placement of the assembly. The assembly must be of materials or products and must comprise all or part of a total structure.

The definition contemplates a two-stage process. The first stage is the construction of the industrialized unit. The second stage is installation of the industrialized unit. Necessarily, construction of the industrialized unit is not contemplated to take place on the building site. Rather, it is contemplated that construction of the industrialized units will be performed off site, such as in a factory. Once delivered to the building site, installation of the industrialized unit so that it becomes all or part of the structure is contemplated. The only on-site construction contemplated by the definition is preparation for placement (installation) of the industrialized unit so as to constitute at least part of the structure. No additional on-site construction involving the industrialized unit itself is contemplated. Accordingly, the closed construction requirement of Ohio Adm. Code 4101:2-1-55 is not inherently inconsistent with the statutory construction.

Plaintiff's contention that the rule creates an artificial distinction between open and closed construction is unsupported by any evidence. There is nothing in the record demonstrating how and to what extent the so-called open construction can comply with the statutory definition of industrialized unit. Likewise, plaintiff's contention that the rule would limit industrialized units to modular units is without merit, there being no evidence supporting such a conclusion. Rather, Ohio Adm. Code 4101:2-1-55(C)

and (E) negate plaintiff's contention that the rule limits industrialized units to modular units. Plaintiff does contend in its brief that its factory-produced assemblies are designed to fit together and that nothing is added to the assemblies at the erection site. However, there is no evidence in the record supporting such statements, even if they be pertinent.

Furthermore, the definition of "industrialized unit" set forth in R.C. 3781.10 is not self-executing but, instead, requires some other statutory provisions, using the term as so defined, to give operative effect to the definition. R.C. 3781.10(A) requires the board to adopt rules governing the construction of industrialized units. Rules so adopted pertain to construction rather than to installation of industrialized units, which as we have noted necessarily takes place off site. Similarly, R.C. 3781.11(A) requires the board to adopt rules to provide uniform minimum standards and requirements for construction of industrialized units in order to make buildings safe and sanitary. R.C. 3781.11(C) requires the board's rules to:

"[P]ermit, to the fullest extent feasible, * * * the use of industrialized units which tend to reduce the cost of construction and erection without affecting minimum requirements for the health, safety, and security of the occupants or users of buildings or industrialized units and without preferential treatment of types or classes of materials or products or methods of construction."

R.C. 3781.11(D) requires the board's rules to "Encourage, so far as may be practicable, the standardization of construction practices, methods, equipment, material, and techniques, including methods employed to produce industrialized units.* * *"

Significantly, the statutes do not require the board to approve every assembly which might meet the statutory definition of R.C. 3781.10; but, instead, the statutes, R.C. 3781.11(C) in particular,

require the board's rules to permit use of industrialized units only "to the fullest extent feasible." Necessarily, some discretion is vested in the board as to the extent to which it is feasible to use industrialized units without affecting minimum requirements for health, safety and security.

Similarly, R.C. 3781.11(D) requires the board, to the extent practicable, to encourage standardization of methods employed to produce industrialized units. There is nothing in the record before us to indicate either that the closed-construction requirement is inconsistent with standardization of methods employed to produce industrialized units or with the feasibility of using industrialized units without affecting minimum requirements for health, safety and security. The provision of the rule that assembly or construction of industrialized units must be such as to obviate normal inspection for code compliance at the site of intended use suggests a determination by the board that minimum requirements for health, safety and security of occupants or users of buildings are better assured by on-site inspection when feasible. There is no evidence indicating this to be an unreasonable determination.

The definition of "closed construction" contained in the rule indicates the circumstances under which health and safety will be better served by on-site inspection, namely, when the structural, plumbing, electrical, environmental control or fire-protection elements or components are concealed and not accessible for inspection at the site of erection without disassembly, damage or destruction of the prefabricated assembly.

Plaintiff contends that the word "assembly" must be construed as meaning "the complete group of parts required to put something together," rather than something which has been put together. Such a construction is totally inconsistent with the remainder of the definition, which requires the assembly to be at least substantially self-sufficient and to constitute at least a part of a structure. Rather, a complete group of parts required to put something together constitutes an assembly only when the parts have been assembled into a single unit. Although the word "assembly" may be variously defined, the essential element is that it consist of individual parts which have been joined together into a single whole. However, under the statutory definition, to constitute an industrialized unit the assembly need not constitute an entire structure but, when installed, it must constitute at least a part of a structure.

Plaintiffs also contend that the statutory use of the word "self-sufficient" is inconsistent with the concept of "closed construction" as used in the rule. Plaintiff has not defined the word "self-sufficient" but does contend that it describes "the overall nature of various types of industrialized units." The word "self-sufficient" as used in the statute means essentially "complete in itself" and describes the ability to maintain itself without outside aid. Since the word "self-sufficient" connotes something which is complete or sufficient in and of itself, we find no inherent inconsistency between the rule concept of closed construction and the statutory concept of self-sufficiency. The word "closed" is used in the rule in the sense of self-contained, such as a self-contained unit admitting of no additions.

Although plaintiff in its brief generally refers to industrialized units as those which are factory built, there is some suggestion in its brief that the statute would permit industrialized units to be constructed on the building site. Not only would this be inconsistent with the apparent statutory concept of industrialized unit, but R.C. 3781.04 twice refers to inspection of industrialized units "at the point of origin."

Accordingly, we conclude that the

trial court erred in declaring Ohio Adm. Code 4101:2-23-99 (now 4101:2-1-55) to be in conflict with R.C. 3781.10 and, thus, invalid. Defendants' assignment of error is well-taken.

For the foregoing reasons, the assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for entry of judgment in accordance with law consistent with this opinion.

*Judgment reversed and cause remanded.*

McCORMAC and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.